**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

**Morgan A. Bettinger,**

       **Plaintiff,**

**v.**                                   **Case No. 3:23-cv-00041-NKM**

**The Rector and Visitors of**
**the University of Virginia,** *et al.***,**

       **Defendants.**

**DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF RULE 12(b)(6) MOTION TO DISMISS COMPLAINT**

Defendants, by counsel, pursuant to Local Civil Rule 11(c), submit this memorandum in support of their motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**INTRODUCTION**

Plaintiff claims that Defendants discriminated against her on the basis of her race and subjected her to a racially hostile educational environment in violation of Section 1983, Title VI and Section 1981. Additionally, Plaintiff claims that Defendants violated her First Amendment rights of free speech in violation of Section 1983. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

Plaintiff's claims under Section 1983 and Title VI are time-barred. These claims are subject to a two-year statute of limitations. The Complaint, on its face, establishes that Plaintiff's claims accrued at least by June 2021, if not earlier. Plaintiff did not commence this action, however, until July 28, 2023, more than two years from the latest possible accrual. Consequently, Plaintiff's claims are untimely and must be dismissed.

Additionally, Plaintiff's Section 1981 claim should be dismissed because the Complaint fails to allege the existence of a contractual relationship, and all of Plaintiff's claims—Section 1981, Section 1983 and Title VI—should be dismissed because the Complaint fails to allege facts sufficient to show that the alleged bad acts would not have occurred but for Plaintiff's race.

Furthermore, the individual Visitor Defendants, President Ryan and Dean Groves are immune from Plaintiff's Section 1983 and Section 1981 claims pursuant to the doctrine of qualified immunity.

Lastly, to the extent that Plaintiff's Complaint states a claim under Section 1983, Title VI and/or Section 1981, it still should be dismissed pursuant to Rule 8 of the Federal Rules of Civil Procedure.

## STANDARDS APPLICABLE TO RULE 12(b)(6) MOTION TO DISMISS

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–81 (2009).

"An affirmative defense permits 12(b)(6) dismissal if the face of the complaint includes all necessary facts for the defense to prevail." *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850–51 (4th Cir. 2016) (citations omitted).  Thus, "in order for a defendant to succeed on a statute of limitations 12(b)(6) defense, 'all facts necessary to show the time bar must clearly appear 'on the face of the complaint.'" *Hall v. Lassiter*, No. 3:16-cv-00061, 2016 WL 6903721, *2 (W.D. Va.

Nov. 23, 2016) (quoting *Dickinson v. Univ. of N. Carolina*, 91 F. Supp. 3d 755, 763 (M.D.N.C. 2015)).

Rule 12(d) prohibits district courts from considering evidence outside the pleadings on motions to dismiss, unless the process is converted to summary judgment. *See* Fed. R. Civ. P. 12(d).  However, without risking conversion of the proceedings, courts can consider "documents attached to the complaint, as well as those attached to [a] motion to dismiss, so long as they are integral to the complaint and authentic." *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 Fed.Appx. 332, 334 (4th Cir. 2013) (internal quotation marks omitted) (citing *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)); *accord E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011); *Caner v. Autry*, 16 F. Supp. 3d 689, 699 (W.D. Va. 2014).

## FACTS ALLEGED

The Complaint is 102 pages with 360 separately numbered paragraphs, many of which contain numerous, lengthy subparagraphs.  The following represents Defendants' best effort to fairly summarize the material allegations pertinent to Defendants' motion.

## I.    The Parties.

Plaintiff Morgan A. Bettinger is an alumna of the University of Virginia (the "University"). Plaintiff, a White woman, enrolled at the University in Fall 2019. (Compl. ¶¶ 37-38.)  Plaintiff graduated from the University sometime prior to June 2021. (*Id.* ¶ 232.)

Defendants include The Rector and Visitors of the University of Virginia, as well as the individual Rector, Vice-Rector and Visitors. (*Id.* ¶¶ 40, 48.)  Defendants also include James E. Ryan, the University's President, and Allen W. Groves, who until 2021 served as the University's Associate Vice President and Dean of Students. (*Id.* ¶¶ 51, 59.)

3

II.     **The Alleged Statement.**

Plaintiff alleges that while driving home on July 17, 2020, she encountered standstill traffic on High Street in downtown Charlottesville, Virginia. (*Id.* ¶¶ 63-70.)  Plaintiff parked her car and walked toward the source of the backup where she saw "a large group of protestors sitting and kneeling in the middle of High Street." (*Id.* ¶¶ 72-76.)  The protestors were affiliated with Black Lives Matter and "ANTIFA" and were staging a "noise demonstration" to protest racial injustices. (*Id.* ¶ 70.)  The protest occurred two miles away from the University campus during the summer, when the University was not in session. (*Id.* ¶ 71(A) and (B).)

Plaintiff approached a nearby truck also stuck in traffic and allegedly commented to the driver that, "Well, it's a good thing you're here because otherwise they could be made speed bumps." (*Id.* ¶¶ 77-79.)  Soon thereafter, "a group of protestors seemed to be directing their attention at [Plaintiff]." (*Id.* ¶ 82.)  Plaintiff returned to her vehicle, whereupon the group surrounded her "shouting vulgarities and racial epithets" and "slamming their hands on the car." (*Id.* ¶¶ 83-106.)  Among the group was the protest organizer, an African American woman, also a student at the University, who subsequently filed a complaint against Plaintiff with the University (the "Complainant").  Plaintiff called police, the group surrounding her car dispersed after an officer arrived, and Plaintiff went home. (*Id.* ¶¶ 112-119.)

According to the Complaint, "[w]ithin moments of [Plaintiff's] arrival at the protest," the Complainant accused Plaintiff on social media of racism and telling the truck driver that the protestors "would make good speed bumps." (*Id.* ¶¶ 122-123.).  Complainant's posts quickly went viral, with some readers responding on social media with threats against Plaintiff. (*Id.* ¶¶ 126-134.)

III.    **The Alleged Injuries.**

Plaintiff alleges that in the days after the incident on July 17, 2020, she was subjected to extreme racial hostility by University faculty and students who allegedly joined the Complainant in publicly condemning Plaintiff. (*Id.* ¶¶ 143-161.)  Plaintiff also alleges that President Ryan and Dean Groves did not protect Plaintiff from the "racist abuse and racial harassment." (*Id.* ¶ 153.)

Further, Plaintiff accuses the University, President Ryan and Dean Groves of "knowingly subject[ing] the Plaintiff to a thirteen-month long process of persecution followed by the permanent unconstitutional impairment of her reputation and formal student records, all because of race and because of [Plaintiff's] race." (*Id.* ¶ 197.)  The alleged "process of persecution" included three separate investigations initiated in response to the complaints lodged against Plaintiff:

1.    **Threat Assessment Team Investigation**: Defendants, allegedly "motivated by race, conducted a Threat Assessment Team investigation of whether [Plaintiff] should be considered to pose a threat of imminent violence or harm to the community as a result of her fifteen spoken words." (*Id.* ¶¶ 198(B).)  In "late July or early August 2020," the Threat Assessment Team concluded that Plaintiff did not pose a threat to the community or anyone in it. (*Id.* ¶ 212.)

2.    **University Judiciary Committee**:  Defendants, allegedly "motivated by race, initiated, conducted, and tampered with the University Judiciary Committee and Judicial Review Board 'investigations,' hearings, sham trials, and utterly bogus 'reviews' . . . starting from July 2020 and lasting well into April 2021." (*Id.* ¶¶ 198(C).)  On September 26, 2020, following an alleged "phony show trial" before the University Judiciary Committee, a jury of five undergraduate students found

5

Plaintiff guilty of violating the University's Standards of Conduct, and the University Judiciary Committee sanctioned Plaintiff. (*Id.* ¶¶ 213-216.)   The sanctions included, among other things, three meetings with an African-American professor to discuss the history of police community relations and "expulsion in abeyance if [Plaintiff] return[s] to the UJC and [is] found guilty of a second standard 2 charge." (*Id.* ¶ 216.)   The Judicial Review Board denied Plaintiff's appeal. (*Id.* ¶ 213.)

3.    **<u>Office of Equal Opportunity and Civil Rights</u>**: Defendants, allegedly "motivated by race, initiated and subjected [Plaintiff] to a year-long 'Civil Rights' investigation" by the Office of Equal Opportunity and Civil Rights "that would ultimately result in her total exoneration." (*Id.* ¶ 198(D).)   On the day before Plaintiff graduated, the EOCR informed Plaintiff's attorney that Plaintiff was "free to attend" graduation ceremonies. (*Id.* ¶ 229.)   "[S]ometime in June 2021, well <u>after</u> graduation," the EOCR issued two reports that allegedly "fully and completely exonerated" Plaintiff. (*Id.* ¶¶ 232-233 (emphasis in original)).   Specifically, the EOCR found that Plaintiff "never threatened anyone," "was not a threat to anyone," her words "could not be reasonably interpreted as a threat," "no evidence of threating intent existed," the Complainant "<u>never heard [Plaintiff] speak</u>," and the Complainant "admitted her accusations were false and based on 'something she may have <u>misheard</u>.'" (*Id.* ¶ 233 (emphasis in original)).

Following the EOCR's report issued in June 2021, Plaintiff asked President Ryan to "rectify" her conviction and sanction by the University Judiciary Committee, but on August 10, 2021, President Ryan refused. (*Id.* ¶¶ 198(C), 234-240, 307-310.)

6

## ARGUMENT AND AUTHORITIES

I.     **Plaintiff's Section 1983 and Title VI Claims Are Time-Barred.**

In Counts I and II of her Complaint, Plaintiff seeks relief under 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 2000d, *et seq.* ("Title VI") for alleged racial discrimination and harassment.   In Count III, Plaintiff seeks relief under Section 1983 for alleged violations of Plaintiff's First Amendment free-speech rights.   These Section 1983 and Title VI claims are time-barred.

A.     **Plaintiff's Section 1983 and Title VI claims are subject to a 2-year statute of limitations.**

Section 1983 and Title VI claims "borrow" from the forum state's personal injury limitations period. *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) ("It is well-settled that sections 1983 and 1985 borrow the state's general personal injury limitations period . . . We therefore agree with our sister circuits that have considered the question that the personal nature of the right against discrimination justifies applying the state personal injury limitations period to Title VI claims.").   Personal injury actions must be brought in Virginia "within two years after the cause of action accrues." Va. Code § 8.01-243(A); *Hester v. Washington & Lee Univ.*, No. 6:22-cv-00002, 2022 WL 4289875, *3 (W.D. Va. Sept. 16, 2022). Thus, Plaintiff's Section 1983 and Title VI claims are subject to a limitations period of two (2) years. *Hester*, 2022 WL 4289875 at *3 (Title VI); *Dillow v. Virginia Polytechnic Inst. & State Univ.*, No. 7:22-cv-00280, 2023 WL 2320765, *9 (W.D. Va. Mar. 2, 2023) (Section 1983); *Doe v. Virginia Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 489–90 (W.D. Va. 2019) (Section 1983).

7

**B.      Plaintiff's Section 1983 and Title VI claims accrued no later than June 2021, more than two years before Plaintiff commenced this action.**

Although state law defines the limitations period for Section 1983 and Title VI claims, federal law determines accrual. *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)).  "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (quoting *Nasim*, 64 F.3d at 955).  That is, "[a] civil rights claim accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (quoting *Cox*, 529 F.2d at 50); *accord Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379, 389 (4th Cir. 2014).

Critically, "[t]he cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (internal quotations omitted). "Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id.*  Therefore, "the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (emphasis in original; quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (1979)).

According to Plaintiff, she was injured by Defendants almost immediately after the July 17, 2020, incident on High Street.  The Complaint alleges a "thirteen-month long process of persecution" that began no later than the day after the High Street incident, July 18, 2020, when Defendants allegedly initiated and subjected Plaintiff to the three investigations allegedly because of her race and speech. (*See* Compl. ¶¶ 198, 206.)  Thus, the Complaint alleges on its face that the

injuries forming the bases of Plaintiff's Section 1983 and Title VI claims first occurred on July 18, 2020, although the full extent of the injuries was not yet known.  Accordingly, Section 1983 and Title VI claims in Counts I, II and III of the Complaint are time-barred because they accrued in July 2020, approximately three years before Plaintiff commenced this action on July 28, 2023.

Assuming *arguendo* that Plaintiff's claims did not accrue in July 2020 when Defendants allegedly initiated and subjected her to multiple investigations due to her race and speech, the next possible accrual date is September 26, 2020, when the University Judiciary Committee found her guilty and sanctioned her. (*See id.* ¶¶ 198(C), 213-216.)[1]  Even this later date, though, is almost three years prior to Plaintiff commencing this action.

Moreover, accepting all well-pleaded allegations as true and drawing all reasonable inferences in Plaintiff's favor, the absolute latest possible accrual date for Plaintiff's claims is when Plaintiff graduated from the University, which Plaintiff alleges occurred before June 2021. (*See id.* ¶ 232 ("Eventually, sometime in June of 2021, well <u>after</u> graduation . . . ." (emphasis in original))).  By the time Plaintiff graduated prior to June 2021, Plaintiff had been sanctioned and completed her obligations pursuant to the sanctions.  Thus, Plaintiff graduated, and her claims accrued, no later than June 2021, more than two years prior to Plaintiff commencing this action. *Peabody v. Rector & Visitors of Univ. of Virginia*, No. 3:21-cv-44, 2022 WL 1251318, *4 (W.D. Va. Apr. 27, 2022) ("Even if the Court applies the latest possible imaginable date for when Peabody's cause of action might have accrued—when she graduated from UVA in August 2019 (id. at ¶ 76)—the statute of limitations still would have run by the time she filed the present

---

[1]      According to the Complaint, the other two investigations exonerated Plaintiff. (*See* Compl. ¶¶ 212, 233.)

complaint in November 2021."), *appeal dismissed sub nom. Peabody v. Rectors & Visitors of Univ. of Virginia*, No. 22-1605, 2022 WL 17369606 (4th Cir. Sept. 19, 2022).

The Complaint emphasizes August 10, 2021, the date on which President Ryan denied Plaintiff's request to "rectify" her guilty verdict and sanctions. (*Id.* ¶¶ 198(C), 234-240, 307-310.) Plaintiff alleges that upon her receipt of the EOCR summary report in June 2021, she "petitioned" President Ryan to "reverse, withdraw, modify, or correct student discipline decisions," *i.e.*, the University Judiciary Committee's guilty verdict and sanction. (See Compl. ¶¶ 232, 239.)  Plaintiff alleges further that on August 10, 2021, despite possessing "the most complete collection of evidence in the matter and the official conclusions and official findings of the University's multiple investigations," and despite knowing "that [Plaintiff] had been wronged," (*id.* ¶ 307), President Ryan denied Plaintiff's petition, (*id.* ¶¶ 307-310; *see also id.* ¶ 198(C)).

To the extent Plaintiff contends that her Section 1983 and Title VI claims did not accrue until August 10, 2021, her argument fails.  As Plaintiff acknowledges, she had already "been wronged" by the time she petitioned President Ryan in June 2021. (*Id.* ¶ 307.)  President Ryan's denial of Plaintiff's petition, therefore, is merely an effect of the alleged injury caused by the University Judiciary Committee; it is not a new, independent injury. *See Doe*, *supra*, 400 F. Supp. 3d at 493–94.  Simply put, "the existence of an appeal is of no consequence" for purposes of calculating the accrual date of Plaintiff's claims. *Dillow*, *supra*, 2023 WL 2320765 at *10 (citing *Ricks*, *supra*, 449 U.S. at 261). *Accord Doe*, 400 F. Supp. 3d at 491 ("*Ricks* and other cases cited by defendants hold that the mere fact that there is an administrative appeal process does not negate the fact that the initial decision gives the plaintiff notice of his claim.") (collecting cases).

"As the *Ricks* Court explained, '[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.'" *Doe*, 400 F.

Supp. 3d 479 at 490 (quoting *Ricks*, 400 F. Supp. 3d at 258). The alleged discriminatory acts occurred, according to the Complaint, immediately following the July 17, 2020, incident, when Defendants allegedly initiated and subjected Plaintiff to three discriminatory investigations. Everything after that was merely an effect of that initial injury. At the absolute latest, Plaintiff's claims accrued prior to June 2021, when Plaintiff graduated from the University. Counts I, II and III are therefore time-barred to the extent they purport to assert claims under Section 1983 and Title VI.

## II.    The Complaint Fails To State a Claim Under Section 1981, Section 1983 and Title VI.

### A.    The Complaint Fails To Allege a Contractual Relationship Under Which Plaintiff Has Rights Protected by Section 1981.

In Counts I and II of her Complaint, Plaintiff alleges that she has been the victim of race discrimination in violation of 42 U.S.C. § 1981 ("Section 1981").[2] "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Accordingly, to state a claim for violation of Section 1981,

---

[2]    Plaintiff contends that she is entitled to the following remedies "under" Section 1981: prospective injunctive relief against all Defendants except Dean Groves (Compl. ¶¶ 322-326); compensatory damages against the University, President Ryan and Dean Groves (*id.* ¶¶ 327-341); and punitive damages against President Ryan and Dean Groves (*id.* ¶¶ 342-354). Under established law, however, "when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'" *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). "In other words, a plaintiff must use § 1983 as a vehicle to assert a § 1981 claim against a state actor." *Chambers v. N. Carolina Dep't of Just.*, 66 F.4th 139, 142 (4th Cir. 2023). Accordingly, to the extent that the Complaint purports to seek relief "under" Section 1981, the Complaint fails to state a claim upon which relief may be granted.

a plaintiff must allege "an impaired 'contractual relationship' under which the plaintiff has rights."

*Id.* (quoting 42 U.S.C. § 1981(b)).  That is,

> To succeed on a § 1981 claim, "a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006). A plaintiff must also show that the interference with a contractual interest would not have happened but for the plaintiff's race. *Comcast*, 140 S. Ct. at 1019.[3] Thus, to survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to those legal requirements.

*Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022). *See also Resendiz v. Exxon Mobil Corp.*, 72 F.4th 623, 628 (4th Cir. 2023) ("So to survive a motion to dismiss, [the plaintiff's] complaint must plausibly allege facts that, if true, allow us to reasonably infer that all three elements are met.").

Plaintiff fails to allege the existence of a contractual relationship under which she has rights.  The word "contract" does not appear anywhere in the Complaint's 101 pages and 360 separately numbered paragraphs.  The Complaint alleges generally that Plaintiff was denied "the benefits, privileges, terms, and conditions of a graduate or degree holder for which she had worked, paid, earned, and deserved," (Compl. ¶ 19), but this conclusory allegation is insufficient to establish the existence of a contractual relationship under which Plaintiff has rights, *cf. Nadendla*, 24 F.4th at 305–06 (conclusory allegations of discrimination insufficient to state a claim under Section 1981); *Dillow*, 2023 WL 2320765 at *11.

Moreover, this Court has refused to find that an implied contract arises from the admission of a student to a university or from the payment of tuition by a student. *See Doe v. Univ. of Virginia*, __ F. Supp. 3d ____, 2023 WL 2873379, *8 (W.D. Va. Apr. 10, 2023) ("District courts in the Fourth

---

[3]     *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. --, 140 S. Ct. 1009 (2020).

Circuit have declined to recognize tuition as a basis for an implied contract between a student and a university under Virginia law.") (collecting cases).  Similarly, "this Court and numerous others have held that generally applicable university conduct policies, such as handbooks and sexual assault policies, do not establish a contract under Virginia law." *Doe v. Washington & Lee Univ.*, 439 F. Supp. 3d 784, 792 (W.D. Va. 2020) (collecting cases). *See also Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 239 and n.9 (4th Cir. 2021).  Thus, the Complaint's references to manuals, handbooks and websites are insufficient to allege the existence of a contractual relationship. (*See* Compl. ¶¶ 44-45, 51-54.)  Counts I and II therefore should be dismissed to the extent they purport to assert claims under Section 1981.

**B.    The Complaint Fails To Allege Facts Sufficient To Give Rise To an Inference That "But For" Her Race, Plaintiff Would Have Been Treated Differently By Defendants.**

Plaintiff's Section 1981 claims also must be dismissed because she fails to allege facts sufficient to give rise to the necessary inference that any interference with any contractual interest would not have happened "but for" Plaintiff's race. *See Nadendla*, 24 F.4th at 305–06.  That is, Plaintiff fails to allege that <u>but for</u> her race: (i) there would have been no Threat Assessment Team investigation, no University Judiciary Committee proceeding and no EOCR investigation; (ii) Dean Groves would have interceded to prevent or terminate these proceedings; and (iii) President Ryan would have granted Plaintiff's request to rectify the University Judiciary Committee's decision.  Plaintiff fails to allege a similarly situated comparator or other evidence that would give rise to the requisite inference that any action or inaction by President Ryan or Dean Groves was motivated by Plaintiff's race.  The Complaint repeatedly makes this claim, but there are no facts to support these conclusory allegations.

Plaintiff does not cite any instance in which her putative non-White counterparts engaged

in the same or substantially similar conduct—allegedly threatening other students—and received more favorable treatment than she did. *Whitehurst v. Bedford County School Board*, Case No. 6:19-cv-00010, 2020 WL 535962, *8 (W.D. Va. Feb. 3, 2020). Plaintiff concedes that (i) she made the statement, "Well, it's a good thing you're here because otherwise they could be made speed bumps" (Compl. ¶ 79(A)); (b) the Complainant accused Plaintiff of racism and telling a truck driver that the protestors "would make good speed bumps" (*id.* ¶¶ 122-23); and (c) the University was "inundated with more than one hundred complaints" against the Plaintiff (*id.* ¶ 143). None of the alleged comparators remotely fit this profile. None were accused, or described to have engaged in, direct threats against another person. Further, Plaintiff fails to identify a single instance where President Ryan or Dean Groves terminated or otherwise overturned the University Judiciary Committee's finding of guilt against, or otherwise expunged the disciplinary record of, a non-White student having engaged in substantially similar conduct as Plaintiff. (*See* Compl. ¶¶ 192-195.) Indeed, Plaintiff fails to allege any similarly situated comparator who requested that President Ryan overturn the University Judiciary Committee's decision.

In the absence of plausible and substantially similar comparator allegations, Plaintiff relies instead on conclusory allegations and manifesto-type protests regarding the culture at the University, and thereby invites the Court to infer that they somehow relate to Plaintiff. None of these allegations or complaints regarding University policies or cultural attitudes, however, are specific to Plaintiff or her circumstances. The Complaint simply lacks factual, non-conclusory allegations "sufficient to give rise to a plausible inference of discrimination that was caused by [Plaintiff's race]." *Sheppard* 993 F.3d at 237-238. Accordingly, for this reason, too, the Complaint fails to state a claim under Section 1981.

The Complaint fails to state claims under Section 1983 and Title VI fail for the same

14

reason.  Plaintiff's Section 1983 and Title VI claims are subject to the same "but for" standard as Plaintiff's Section 1981 claims and supported by the same conclusory averments, which fail to give rise to an inference of plausible discriminatory animus by the University, the Visitors or President Ryan. *See id.* (Section 1983); *see also Barnes v. Gorman*, 536 U.S. 181, 185, (2002) (Title IX is modeled after Title VI, and they are interpreted and applied in the same manner); *Sheppard*, 993 F. 3d at 234-38 (applying "but for" causation analysis to Title IX claims alleging discriminatory school disciplinary proceedings).

### III.  The Individual Defendants Are Immune From Plaintiff's Section 1981 and 1983 Claims.

Even if the Court finds that Plaintiff has plausibly alleged Section 1981 and 1983 claims, Defendants, in their individual capacities, are entitled to qualified immunity.  Plaintiff asserts her Section 1981 and Section 1983 claims against each Visitor and President Ryan in their personal capacities, and she also asserts her Section 1981 claim against Dean Groves in his personal capacity. (See Compl. ¶¶ 49, 51, 60, 272-274 and 292-294.)

"It is 'a well-established principle of federal civil rights litigation [] that government officials sued in their personal capacities for violations of federal rights are entitled to qualified immunity if the right was not clearly established at the time of the violation.'" *Sheppard*, *supra*, 993 F.3d at 238 (quoting *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 724 (E.D. Va. 2015)).  Officials lose the protection of the immunity only if it appears that (1) they violated a statutory or constitutional right of the plaintiff, and (2) the right was "clearly established" at the time of the acts complained of such that an objectively reasonable official in their position would have known of the right. *McVey v. Stacy*, 157 F.3d 271, 276 (4th Cir. 1998) (citations omitted).  "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." *Durham v. Jones*, 737 F.3d 291, 299 (4th Cir. 2013).

15

Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," it is important to resolve this issue "early in the proceedings." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

To satisfy the first prong of the qualified immunity test, the plaintiff must allege facts showing that each individual defendant personally was involved in the alleged constitutional deprivation. *See Garraghty v. Com. of Va., Dep't of Corr.*, 52 F.3d 1274, 1280–81 (4th Cir. 1995); *Thompson v. Clarke*, No. 7:17-cv-00111, 2018 WL 4764294, *3 (W.D. Va. Sept. 30, 2018). The most Plaintiff alleges about the individual Visitors in support of her Section 1981 and 1983 claims is that "many members of the Board of Visitors at the time . . . were personally, consciously aware of the racial hatred and abuse being directed at [Plaintiff] by members of the University community and the discriminatory decisions and racially hostile environment to which [Plaintiff] was subjected." (Comp. ¶ 287.) This vague and conclusory allegation is insufficient to establish that any individual Visitor Defendant was personally involved in any of the "racial hatred and abuse" or in any of the "discriminatory decisions and racially hostile environment" Plaintiff alleges. *See Vanterpool v. Cuccinelli*, 998 F. Supp. 2d 451, 464 (E.D. Va. 2014) ("The naked assertions offered in support of Cuccinelli's liability are simply insufficient to maintain a cause of action against him."). Therefore, the individual Visitors are immune, and Plaintiff's Section 1981 and 1983 claims against them must be dismissed.

Moreover, the constitutional rights Plaintiff alleges the individual Defendants violated were not clearly established. "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018); *see Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that

16

right.")  "The inquiry as to whether the law is 'clearly established' is a demanding one." *Allen v. Cooper*, 895 F.3d 337, 356 (4th Cir. 2018) (internal quotation marks and citation omitted).  The Supreme Court "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  In other words, the "rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Wesby*, 138 S. Ct. at 589-90 (quotations and citations omitted). The qualified immunity doctrine exists so that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Abbas v. Woleben*, No. 3:13-cv-147, 2013 U.S. Dist. LEXIS 134446, *17 (E.D. Va. Sept. 19, 2013) (citation omitted).

As noted *supra*, to prevail on her Section 1981 claim, Plaintiff must allege the existence of a contractual relationship between her and the University, which she has not and cannot do. *See Nadendla*, 24 F.4th at 305.  The Fourth Circuit recently held that neither Virginia state law nor federal law clearly establishes the existence of a contractual relationship between a student and a public university. *See Sheppard*, 993 F.3d at 239 and n.9.  Thus, Defendants in their individual capacities—the individual Visitors, President Ryan and Dean Groves—are immune from Plaintiff's Section 1981 claims because the constitutional right allegedly violated was not clearly established.

Plaintiff's Section 1983 claims against the individual Visitors and President Ryan fail for the same reason.  Plaintiff emphasizes that when President Ryan declined Plaintiff's request to "rectify" her alleged injuries, he was aware that the EOCR had allegedly "completely exonerated" Plaintiff. (Compl. ¶¶ 233-239, 307.)  Plaintiff concedes, however, that President Ryan also was aware that the University Judiciary Committee had found Plaintiff guilty and imposed sanctions,

17

and that the Judicial Review Board had denied Plaintiff's appeal. (*See id.*)  Accordingly, Plaintiff fails to allege a clearly established right to have her guilty verdict and sanctions "rectified" by President Ryan.

## IV.    **The Complaint Should Be Dismissed Under Rule 8.**

Lastly, to the extent that Plaintiff's Complaint states a claim under Section 1983, Title VI and/or Section 1981, the Complaint should still be dismissed pursuant to Rule 8 of the Federal Rules of Civil Procedure.  "Unnecessary prolixity in a pleading places an unjustified burden on the district judge and the party who must respond to it because they are forced to ferret out the relevant material from a mass of verbiage." Charles Alan Wright & Arthur R. Miller, 5 Federal Practice & Procedure § 1281 (4th ed.).  Accordingly, Rule 8(a) requires that a pleading seeking relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8(d) further requires that each allegation "be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  A complaint that fails to comply with Rule 8 fails to state a claim and is subject to dismissal under Rule 12(b)(6). *See North Carolina v. McGuirt*, 114 F. App'x 555, 559 (4th Cir. 2004); *Carter v. Virginia Dep't of Game & Inland Fisheries*, No. 3:16-cv-661, 2018 WL 3614975, *4 (E.D. Va. July 27, 2018) (quoting *Dicks v. Flury*, No. CV GLR-14-1016, 2018 WL 453525, at *4 (D. Md. Jan. 16, 2018)).

The decision whether to dismiss a complaint for failure to comply with Rule 8 is a matter within the district court's discretion. *See McGuirt*, 114 F. App'x at 558 (decision to dismiss pursuant to Rule 8 is reviewed for abuse of discretion); *see also Sorto v. AutoZone, Inc.*, 821 F. App'x 188, 195–96 (4th Cir. 2020) (Wynn, J., concurring in part and dissenting in part) (district courts have "wide latitude" to dismiss complaints that fail to comport with Rule 8).  "When determining whether a complaint comports with the requirements of Rule 8, courts look to a variety

18

of factors, including the length and complexity of the complaint, whether the complaint is sufficiently clear to allow the defendant to defend himself, and whether the plaintiff had the benefit of counsel." *Cook v. Unisys Fed. Gov't Grp.*, No. 7:14-cv-00579, 2015 WL 5690976, *3 (W.D. Va. Sept. 28, 2015) (citing *Sewraz v. Long*, 407 F. App'x 718, 718–19 (4th Cir. 2011)); *see also McGuirt*, 114 F. App'x at 558.

At 102 pages with 360 separately numbered paragraphs, including numerous lengthy subparagraphs, Plaintiff's Complaint "is neither short nor plain." *Webb v. Kimmel*, No. 3:22-cv-392, 2023 WL 1926896, *1 (E.D. Va. Jan. 23, 2023). *See also* Carter, 2018 WL 3614975 at *4 ("At base, the proposed Amended Complaint offends Rule 8 on the most basic grounds: it is neither short, nor plain."). The Complaint is unquestionably prolix and excessively redundant. The "Facts" section does not even begin until page 19, Paragraph 61. Numerous paragraphs exceed a page—Paragraphs 70 and 186 each span three pages—and two paragraphs consist solely of the phrase "fifteen words." (Compl. ¶¶ 6, 79(B).)

Moreover, the Complaint consistently mixes factual allegations with legal conclusions and blurs the timing and sequence of key events, seemingly deliberately so. This, combined with the excessive repetition, ultimately obscures the factual bases, if any, for Plaintiff's claims. Indeed, the Complaint suggests that Plaintiff's claims are or may be based on virtually anything that occurred between July 17, 2020, and August 10, 2021. (*See, e.g., id.* ¶¶ 19, 242, 247, 252.) "This renders many of the claims unclear and, ultimately, unfair to [Defendants], who would have to ferret out each plaintiff's claims." *Carter*, 2018 WL 3614975 at *5 (citation omitted); *see also Cook*, 2015 WL 5690976 at *6 ("This convoluted structure not only places an unjustified burden on the court and [the defendant] to make sense of [the plaintiff's] allegations of discrimination,

but also fails to provide proper notice of the factual basis for [the plaintiff's] claims so as to enable [the defendant] to answer and prepare for trial." (internal quotations omitted)).

The statutory schemes underlying Section 1981, 1983 and Title VI are not complex. *Cf. Carter*, 2018 WL 3614975 at *5 (Title VII not complex statutory framework).  Nor are the facts underlying Plaintiff's claims.  Plaintiff has simply chosen to approach her Complaint like a closing statement to a jury, albeit a statement rife with prolix, repetition and obfuscation.  Defendants should not be burdened with answering each of the 360 paragraphs in Plaintiff's Complaint, much less with pouring over it to discern the real bases for Plaintiff's claims.  The Complaint violates Rule 8 and, therefore, should be dismissed.

## <u>CONCLUSION</u>

WHEREFORE, Defendants respectfully request that their motion to dismiss be granted; that the Complaint be dismissed with prejudice; and that Defendants be awarded any additional relief that this Court deems fair and just.


Date:   November 14, 2023.                    Respectfully submitted,

**THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA,
RECTOR ROBERT D. HARDIE,
VICE-RECTOR CARLOS M. BROWN,
ROBERT M. BLUE,
MARK T. BOWLES,
ELIZABETH M. CRANWELL,
THOMAS A. DEPASQUALE,
U. BERTRAM ELLIS, JR.,
PAUL C. HARRIS,
BABUR B. LATEEF, M.D.,
STEPHEN P. LONG, M.D.,
PAUL MANNING,
JAMES B. MURRAY,
JOHN L. NAU,
THE HONORABLE L.F. PAYNE,**

**AMANDA L. PILLION,**
**RACHEL W. SHERIDAN,**
**DOUGLAS D. WETMORE,**
**JAMES E. RYAN,**
**AND**
**ALLEN W. GROVES**

By Counsel


/s/ David B. Lacy
Warren David Harless (VSB No. 20816)
David B. Lacy (VSB No. 71177)
Lauren E. Fisher White (VSB No. 80360)
CHRISTIAN & BARTON, L.L.P.
901 East Cary Street, Suite 1800
Richmond, Virginia 23219
Tel.:    (804) 697-4100
Fax:    (804) 697-6112
wharless@cblaw.com
dlacy@cblaw.com
lfwhite@cblaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2023, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF)

to all counsel of record.


/s/ David B. Lacy
David B. Lacy (VSB No. 71177)
dlacy@cblaw.com
CHRISTIAN & BARTON, L.L.P.
901 East Cary Street, Suite 1800
Richmond, Virginia 23219
Tel.:    (804) 697-4100
Fax:    (804) 697-4112

*Counsel for Defendants*

#4889-7190-3371